# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES GILLIAM, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. 04cv11600 (RGS) |
| BOGATIN FAMILY TRUST, Individually And On Behalf Of All Others Similarly Situated, <br><br> Plaintiff, <br><br> vs. <br><br> FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. 04cv11642 (RGS) |
| CYNTHIA A. BENNETT and GUY E. MILLER, <br><br> Plaintiffs, <br><br> vs. <br><br> FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No. 04cv11651 (RGS) |

[Caption continues on next page]

## MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR APPOINTMENT OF TRI-LEAD COUNSEL AND LIAISON COUNSEL AND PLAINTIFFS' MOTION FOR CONSOLIDATION

| | | |
|---|---|---|
| GHASSAN J. AWALI et al., Individually And On Behalf Of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 04cv11709 (RGS) |
| vs. | ) ) | |
| FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| WILLIAM S. GROESCHEL, Individually And On Behalf Of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 04cv11735 (RGS) |
| vs. | ) ) | |
| FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

| | | |
|---|---|---|
| NANCY HAUGEN, MICHAEL F. MAGNAN, KAREN L. MAGNAN, ROSE M. IANNACCONE, PRESLEY C. PHILLIPS, ANDREA M. PHILLIPS, and CINDY SCHURGIN, for the use and benefit of FIDELITY MAGELLAN AND FIDELITY CONTRAFUND, | ) ) ) ) ) ) ) | Civil Action No. 04cv11756 (MLW) |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| FIDELITY MANAGEMENT AND RESEARCH COMPANY, et al., | ) ) ) | |
| Defendants. | ) ) | |

[Caption continues on next page]

DAVID O. FALLERT, Individually And On Behalf
Of All Others Similarly Situated,                            )
                                                             )
                                                             )
                          Plaintiff,                         )
                                                             )        Civil Action No. 04cv11812 (RGS)
             vs.                                             )
                                                             )
FIDELITY MANAGEMENT AND RESEARCH                             )
COMPANY, et al.,                                             )
                                                             )
                          Defendants.                        )
                                                             )

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT............................................................................................................................... 5

POINT I    THERE ARE COMMON QUESTIONS OF LAW
AND FACT PENDING  BEFORE THE COURT
MAKING CONSOLIDATION APPROPRIATE....................................... 5

POINT II    THE *GILLIAM*  PLAINTIFFS MAY BRING BOTH
CLASS AND DERIVATIVE CLAIMS IN THIS LITIGATION ............ 10

POINT III    THE PURPORTED "STANDING" ARGUMENT IS A RUSE
AND IS IRRELEVANT TO THIS CONSOLIDATION MOTION ........ 14

CONCLUSION.......................................................................................................................... 20

# TABLE OF AUTHORITIES

Page

## CASES

*Alves v. Harvard Pilgrim Health Care, Inc.*,
 204 F. Supp. 2d 198 (D. Mass. 2002) ..................................................................18, 19

*Bertozzi v. King Louie Int'l, Inc.*,
 420 F. Supp. 1166 (D.R.I. 1976)........................................................................11, 12

*Crawford v. Magee*,
 No. 89-1038, 1993 U.S. Dist. LEXIS 15144 (D. Mass. Oct. 12, 1993) .....................13

*In re Colonial Ltd. P'ship Litig.*,
 854 F. Supp. 64 (D. Conn. 1994) ..............................................................................16

*Daily Income Fund, Inc. v. Fox*,
 464 U.S. 523 (1984) ..................................................................................................15

*In re Dayco Corp. Derivative Sec. Litig.*,
 102 F.R.D. 624 (S.D. Ohio 1984) ...............................................................................11

*Dandorph v. Fahnestock & Co.*,
 462 F. Supp. 961 (D. Conn. 1979) .............................................................................16

*In re Dreyfus Aggressive Growth Mut. Fund Litig.*,
 No. 98 Civ. 4318, 2000 U.S. Dist. LEXIS 13469 (S.D.N.Y. Sept. 19, 2000) .............17

*Fallick v. Nationwide Mut. Ins. Co.*,
 162 F.3d 410 (6th Cir. 1998) .....................................................................................17

*Golden Trade S.R.L. v. Lee Apparel Co.*,
 90 Civ. 6291, 90 Civ. 6292, 90 Civ. 7815, 92 Civ. 1667,
 1997 U.S. Dist. LEXIS 8924 (S.D.N.Y. June 24, 1997)................................................9

*In re Great Lakes Dredge & Dock Co.*,
 895 F. Supp. 604 (S.D.N.Y. 1995)...............................................................................9

*Green v. Nuveen Advisory Corp.*,
 186 F.R.D. 486 (N.D. Ill. 1999) .................................................................................15

*Hicks v. Morgan Stanley & Co.*,
 01 Civ. 10071  2003 U.S. Dist. LEXIS 11972 (S.D.N.Y. July 16, 2003) ...................17

*J.I. Case Co. v. Borak,*
    377 U.S. 426 (1964) ................................................................11

*Kamen v. Kemper Fin. Servs.,*
    500 U.S. 90 (1991) .................................................................15

*Kamerman v. Steinberg,*
    113 F.R.D. 511 (S.D.N.Y. 1986) .............................................11

*Kitchens v. U.S. Shelter Corp.,*
    No. 82-1951, No. 3-0771, 1983 U.S. Dist.
    LEXIS 12812 (D.S.C. Oct. 13, 1983) .......................................18

*Krantz v. Fidelity Mgmt. & Research Co.,*
    98 F. Supp. 2d 150 (D. Mass. 2000) .......................................15

*Lamphere v. Brown University,*
    71 F.R.D. 641 (D.R.I. 1976) ...................................................13

*Maywalt v. Parker & Parsley Petroleum Co.,*
    147 F.R.D. 51 (S.D.N.Y. 1993) ...............................................17

*Moore v. Comfed Sav. Bank,*
    908 F.2d 834 (11th Cir. 1990) ................................................19

*Nenni v. Dean Witter Reynolds, Inc.,*
    Civ. No. 98-12454-REK, 1999 U.S. Dist.
    LEXIS 23351 (D. Mass. Sept. 29, 1999) ..................................16

*Olesh v. Dreyfus Corp.,*
    No. CV-94-1664, 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995)....................16

*Payton v. County of Kane,*
    308 F.3d 673 (7th Cir. 2002) ..................................................18

*Petersen v. Federated Dev. Co.,*
    416 F. Supp. 466 (S.D.N.Y. 1976)............................................12

*In re Prudential Sec. Inc. Ltd. P'ship Litig.,*
    163 F.R.D. 200 (S.D.N.Y. 1995) .............................................18

*Ramos v. Patrician Equities Corp.,*
    765 F. Supp. 1196 (S.D.N.Y. 1991)..........................................16

*Sosna v. Iowa,*
    419 U.S. 393 (1975).................................................................15

*Spira v. Nick*,
   876 F. Supp. 553 (S.D.N.Y. 1995) ................................................................16

*Storlazzi v. Bakey*,
   894 F. Supp. 494 (D. Mass. 1995) ................................................................6

*Storlazzi v. Bakey*,
   No. 95-1596, 1995 U.S. App. LEXIS 30146 (1st Cir. Oct. 24, 1995) ..........5

*Tannenbaum v. Zeller*,
   552 F.2d 102 (2d Cir. 1977) ........................................................................13

*Tedesco v. Mishkin*,
   689 F. Supp. 1327 (S.D.N.Y. 1988) ............................................................18

*In re Transocean Tender Offer Sec. Litig.*,
   455 F. Supp. 999 (N.D. Ill. 1978) ...............................................................11

*Weiner v. Winters*,
   50 F.R.D. 306 (S.D.N.Y. 1970) ...................................................................16

*Yamamoto v. Omiya*,
   564 F.2d 1319 (9th Cir. 1977) .....................................................................11

**STATUTES**

15 U.S.C. § 80a-35(b) ...............................................................................9, 15

**MISCELLANEOUS**

*Manuel for Complex Litigation,* §10.22 (4th ed. 2004) ...................................6

S. Rep. No. 91-184 (1969) ..............................................................................16

## PRELIMINARY STATEMENT

Plaintiffs James Gilliam, Bogatin Family Trust, William S. Groeschel, Ghassan J. Awali, Marina Berti, Valeriex A. Daspit, Arthur G. Denker, Randall C. Heyward, Stanley H. Krupa, Nicole Lenzi, David M. Lucoff, Joseph F. Martingano, Michael S. Mendolia, Patricia K. Munshaw, Brian D. Reese, Jay J. Rupp, Gilbert P. Travis, Jewel R. Travis and David O. Fallert (the "*Gilliam* Plaintiffs") hereby submit their Reply Memorandum in Further Support of Plaintiffs' Motion for Appointment of Tri-Lead Counsel and Liaison Counsel and Plaintiffs' Motion for Consolidation. Defendants in this action, as well as plaintiffs in two cases for which the *Gilliam* Plaintiffs seek consolidation, oppose consolidation of the seven actions at issue.[1]

The *Haugen* Plaintiffs and the *Bennett* Plaintiffs separately seek to assert ***only*** a Section 36(b) claim ***only*** on behalf of the Fidelity Funds they own. The *Haugen* Plaintiffs seek to bring that claim only on behalf of two Funds and the *Bennett* Plaintiffs seek to bring their own action on behalf of five Funds.[2] That *Haugen's* and *Bennett's* ownership of Funds overlaps is never addressed by either *Haugen* or *Bennett*. The *Gilliam* Plaintiffs also own all of the Funds owned by *Haugen* and *Bennett*, another fact never mentioned. The result is three competing groups seeking to bring a Section 36(b) claim on behalf of the same five funds. Of course, the *Gilliam* Plaintiffs own 32 Funds (more than six times the total of the Funds owned by both of the other groups) and seek to bring a 36(b) claim on behalf of all the Fidelity Funds. Under these

---

[1]    Plaintiffs in *Bennett v. Fidelity Management And Research Co.*, No. 04cv11651 ("*Bennett*") sent a letter to the Court on September 15, 2004 opposing consolidation. Plaintiffs in *Haugen v. Fidelity Management And Research Co.*, No. 04cv11756 ("*Haugen*") filed their opposition on October 7, 2004. Defendants, as the Independent Trustees, the Nominal Defendant Fidelity Funds, and the Fidelity Defendants, filed three separate oppositions on October 7 and 8, 2004.

[2]    The *Haugen* Plaintiffs own the Fidelity Magellan Fund and the Fidelity Contrafund. The *Bennett* Plaintiffs also own the Magellan Fund and Contrafund, in addition to the Fidelity Growth & Income Fund, the Fidelity Blue Chip Fund, and the Fidelity Low-Priced Stock Fund.

circumstances, consolidation is the only viable option.  Without consolidation, there is the potential for three separate judgments on a Section 36(b) claim covering the same five Funds. The potential for numerous separate and competing actions all alleging the exact same legal claim and arising from the same underlying factual allegations necessitates consolidation.

None of the arguments by *Haugen* or *Bennett* supports litigating the Section 36(b) claims in separate actions.  *Haugen/Bennett*[3] argue that consolidation with *Gilliam* is improper because (1) the claims alleged in *Haugen/Bennett* are different than in *Gilliam*; (2) there are conflicts between class and derivative claims the *Gilliam* Plaintiffs have asserted; and (3) consolidation would create delays of the resolution of the *Haugen/Bennett* actions and prejudice those plaintffs. Notably, the *Haugen/Bennett* Plaintiffs do not argue that the *Gilliam* Plaintiffs' counsel should not be lead class counsel.  Instead, they argue that the *Gilliam* Plaintiffs can assert only class claims and the *Haugen/Bennett* Plaintiffs and their counsel will assert the Section 36(b) claim solely against the five Funds held by the *Haugen/Bennett* Plaintiffs.  The contentions of the *Haugen/Bennett* Plaintiffs are erroneous.

Although the *Haugen/Bennett* Plaintiffs attempt to cast aspersions on the *Gilliam* Plaintiffs' counsel, their memorandums offer no arguments why their Section 36(b) claims against five of 206 Funds should be carved out of an obviously appropriate consolidated litigation that seeks to bring comprehensive Section 36(b) claims on behalf of all 206 Funds in addition to other class and derivative claims arising out of the same facts.  This is especially true as ***all five of the Funds in the Haugen/Bennett actions (as well as 27 more Funds) are owned***

---

[3]    *Haugen* and *Bennett* are represented by separate counsel and have submitted separate briefs opposing consolidation, but their arguments are generally the same.  Where they make the same arguments, they are referred to therein as *Haugen/Bennett*.

**by one or more of the *Gilliam* Plaintiffs**. *Haugen/Bennett* offer no rationale for why the claims of the *Gilliam* Plaintiffs should be shunted into the small, restrictive *Haugen/Bennett* actions when the *Gilliam* actions seek recovery under additional theories and for a class that includes investors in the entire Fidelity Fund family. What *Haugen* derogatorily refers to as a "hodge-podge" of claims by *Gilliam* is, in reality, thorough lawyering for maximum recovery. *Haugen/Bennett* are limiting their claims for the ***sole*** purpose of getting a lead position for their counsel at the expense of the vast majority of Fidelity mutual funds and investors who will be left with no representation under *Haugen's/Bennett's* restrictive theories. Limiting suit to a single count (when many more are viable) and five funds (when all can be participants) is not a cause for braggadocio and should not be rewarded by the Court.

The *Gilliam* Plaintiffs can represent both class and derivative claims in this action. The class and derivative claims are simply alternative theories pursuant to which the *Gilliam* Plaintiffs seek to obtain the maximum relief for the maximum number of current and former shareholders from common wrongdoers (not the Funds) who have control, and were responsible for the wrongdoing across, all of the Funds. The class and derivative claims are thus consistent and compatible and the *Gilliam* Plaintiffs' proposed Lead Counsel can pursue both of them. Courts have routinely held that there is not a *per se* conflict of interest even where (unlike here) a class suit is brought against the same company that is represented in a derivative claim in the same action. Here, there is no such conflict because the Funds are not named as defendants. The *Gilliam* Plaintiffs' counsel have shown that the class and derivative actions are based upon proof of the same nucleus of facts and they have the ability to attack all fronts with equal vigor.

In addition, although *Haugen/Bennett* suggest that the *Gilliam* Plaintiffs cannot bring Section 36(b) claims on behalf of Funds for which they have no client investors, because the

*Gilliam* Plaintiffs indisputably have standing to bring Section 36(b) claims with respect to at least 32 Funds, the *Haugen/Bennett* purported "standing" argument is a ruse. It has nothing whatsoever to do with consolidation, which is obviously appropriate here. In any event, all the Funds work together as one unitary organization and Defendants are juridically linked. As a result, the *Gilliam* Plaintiffs have standing with respect to all of the Funds.

In short, the *Haugen/Bennett* Plaintiffs and their counsel seek to carve out a leadership position for themselves for only five Funds while leaving the remaining Funds without representation. They misleadingly attempt to differentiate their claims from the claims in the *Gilliam* Plaintiffs' complaints when they know full well that the claims and underlying facts are essentially identical in all the cases. Despite an attempt by those opposing consolidation to create artificial labels for the *Haugen/Bennett* claims (improperly labeled solely as the "Excessive Management Fee Cases") as opposed to the *Gilliam* claims (improperly labeled solely as the "Revenue Sharing Cases"), ***every one of these cases is about excessive fees***. All of the complaints at issue, in one place or another, contain identical allegations, even though some may focus more heavily on certain types of excessive fees than others. Taken to their logical conclusion, the arguments of *Haugen* and *Bennett* would mean that hundreds of plaintiffs could file separate Section 36(b) claims on behalf of the 206 Funds, each emphasizing a slightly different aspect of excessive fees and no consolidation would be possible. This faulty contention flies in the face of well-established consolidation principles. Where, as here, there are common questions of law and fact, consolidation is appropriate.

It makes no sense for the *Haugen/Bennett* counsel to prosecute identical claims for only five Funds when counsel for the *Gilliam* Plaintiffs have agreed to consolidation and a leadership structure across all of the Funds -- the more efficient and effective way to prosecute these cases.

- 4 -

As such, due to the reasons more fully stated herein, consolidation of the above-captioned

actions is appropriate and will best serve the interests of judicial economy and will avoid

unnecessary costs or delay.  Milberg Weiss, Stull, Stull & Brody, and Scott + Scott have

substantial experience in the prosecution of class and derivative actions, and have the resources

necessary to efficiently conduct this litigation.  All three firms are also well-qualified to act as

Lead Counsel by virtue of their track record in the area of class and derivative litigation.

## ARGUMENT

## POINT I

### THERE ARE COMMON QUESTIONS OF LAW AND FACT PENDING BEFORE THE COURT MAKING CONSOLIDATION APPROPRIATE

The *Haugen/Bennett* Plaintiffs (and Defendants) argue that the *Haugen/Bennett* claims

and the *Gilliam* claims are dissimilar and should not be consolidated.  Even a cursory review of

the complaints demonstrates that this fallacious argument is no more than an attempt by the

*Haugen/Bennett* counsel to find some way to artificially distinguish their cases to carve out a

lead counsel position for themselves.  Defendants, of course, have an interest in limiting their

exposure and therefore arguing in favor of the ***restricted*** cases that *Haugen/Bennett* want to

bring.  But all of the Actions, including *Haugen/Bennett*, are based on common questions of law

and fact.  The *Haugen/Bennett* claims are subsumed in the *Gilliam* Actions -- all of which allege

excessive fees -- and all should be consolidated.  Federal Rule of Civil Procedure Rule 42(a)

explicitly states that consolidation is appropriate when there is "a common question of law or

fact pending before the Court."  *See Storlazzi v. Bakey*, No. 95-1596, 1995 U.S. App. LEXIS

30146, at *4-5 (1st Cir. Oct. 24, 1995) ("[a] motion for consolidation will usually be granted

unless the party opposing it can show 'demonstrable prejudice'").[4]  The standard under Rule 42(a) is clearly met here and the *Haugen/Bennett* Plaintiffs have not shown any prejudice that would result from consolidation.[5]  Accordingly, the cases should be consolidated.

The *Haugen/Bennett* and *Gilliam* actions all allege the payment of excessive fees.  In fact, all allege that, although the Funds' assets have increased dramatically over time, Defendants failed to pass on the resulting economies of scale to Plaintiffs, and instead retained the excess profits, including advisory fees, resulting from the economies of scale.  *Haugen's/Bennett's* allegations of the failure to pass on economies of scale is just another way to say that excessive fees were charged.  The *Gilliam* Plaintiffs bring claims under Section 36(b) just like the *Haugen/Bennett* Plaintiffs.  A comparison of the three complaints clearly shows common factual allegations:

| Allegation | *Gilliam* Complaint | *Haugen* Complaint | *Bennett* Complaint |
|---|---|---|---|
| Excessive management fees | ¶¶ 4, 56, 63, 69-70 | ¶¶ 11-12; 45-56 | ¶¶ 11-12; 41-53 |
| Failure to pass on economies of scale | ¶¶ 4, 68-70 | ¶¶ 60-71 | ¶¶ 57-68 |
| Improper use of directed brokerage | ¶¶ 78-87 | ¶¶ 88, 90 | ¶¶ 86, 88 |
| Improper use of soft dollars | ¶¶ 78-87 | ¶¶ 89-92 | ¶¶ 87-90 |
| Failure to offer breakpoints | ¶ 74 | ¶ 18 | ¶ 18 |

---

[4]    In *Storlazzi v. Bakey*, the district court ordered the consolidation of three actions resting on "related violations […] against the same or related actors," even though a new theory of liability was advanced in the most recent case and the plaintiff opposed consolidation on the basis that consolidation would prejudice his right to "just, speedy and inexpensive litigation." 894 F. Supp. 494, 499-500 (D. Mass. 1995).  The district court based its consolidation of the actions on "the interest of judicial economy and efficiency, and a concern over piece-meal litigation." *Id.* at 500.  The *Haugen/Bennett* Plaintiffs make the very same arguments here and, as in *Storlazzi*, these arguments should be rejected.

[5]    Consolidation is also appropriate under § 10.22 of the Manual for Complex Litigation (4th ed. 2004), which discusses consolidation of cases in the same court.

| Allegation | *Gilliam* Complaint | *Haugen* Complaint | *Bennett* Complaint |
|---|---|---|---|
| Growth of client base by pushing brokers to sell Fidelity Funds | ¶¶ 3, 87 | ¶ 86 | ¶ 85 |
| Board of Trustees failed in their duty to protect the Funds and investors | ¶¶ 49-64 | ¶¶ 27-29 | ¶¶ 28-30 |
| The dominance and undue influence of Defendants on the Board of Trustees | ¶¶ 54-55 | ¶¶ 110, 114-115 | ¶¶ 112 -113, 116-117 |
| The inter-relationship of the Fidelity Funds family | ¶¶ 13, 18, 49 | ¶ 114 | ¶ 116 |

As demonstrated in the above table, the cases share common allegations and will share common

proof of liability.  However, in order to maximize the recovery for the injured shareholders, the

*Gilliam* Plaintiffs further allege that Defendants caused the Funds' prospectuses to fail to

properly disclose excessive fees, including directed brokerage and misuse of soft dollars and

other 12b-1 fees.  While all of the Actions, including the *Haugen/Bennett* actions, allege that

Fidelity's investment advisers harmed the Funds and their shareholders, the *Gilliam* Plaintiffs go

further and name more defendants than *Haugen/Bennett* in an effort to hold all of the

wrongdoers, including the Fidelity distributor, parent companies, and board of trustees,

accountable for their actions.[6]  While the parties opposing consolidation desperately try to

---

[6]    The Independent Trustee Defendants argue that consolidation would cause them to become involved in the *Haugen/Bennett* actions where they are not named as defendants.  Ind. Trustee Mem. at 4.  The Independent Trustee Defendants are implicated in the *Haugen/Bennett* actions even though they are not defendants.  Both the *Haugen* and *Bennett* complaints include a section entitled "The Funds' Conflicted Board of Trustees," s*ee Haugen* Compl. at 9; *Bennett* Compl. at 9, and a section entitled "The Independence And Consciousness of the Trustees (Or Directors)."  *See Haugen* Compl. at 28; *Bennett* Compl. at 30.  The role of the Trustees in approving management fees, among other things, is an issue in all the Actions.  The Fidelity Funds also argue that they are not named in the *Haugen/Bennett* actions and should not be forced to join in the adjudication of those actions.  Nominal Def. Mem. at 3.  The Funds are ***not*** named as defendants in the *Gilliam* action  but rather as nominal defendants because the Funds

Continued on next page

- 7 -

compartmentalize the claims into two camps, in one place or another in all the complaints at issue, all of the same underlying allegations are made and all of the same entities and individuals are either named defendants or related parties. The fact that one case may emphasize certain facts over others or give more detail and explanation does not mean that the cases should not be consolidated.

The similarity of claims and Defendants in all of the actions calls for consolidation. The common issues of fact, including the role of the board of trustees, the management fees paid, economies of scale, directed brokerage, and the abuse of soft dollars, are necessary to prove all of the claims in all of the cases.[7] There are also common issues of law as many of the *Gilliam* Plaintiffs' claims are based upon breaches of fiduciary duty, which is the only claim the *Haugen/Bennett* Plaintiffs assert. In fact, all plaintiffs in all cases assert a claim under Section 36(b) and the *Gilliam* Plaintiffs own shares in all five of the *Haugen/Bennett* Funds (plus 27 more Funds). Thus, consolidation of the actions will best serve all of the Fidelity Funds and the investing shareholders, since each shareholder and each Fund suffered the same harm from Defendants and all of the claims should be consolidated into a single action.

The *Haugen/Bennett* Plaintiffs argue that "[t]here is also the potential for conflict between the *Haugen* Action and the Class Actions because the *Haugen* Action requires a bench trial […] whereas the plaintiffs in the Class Actions have demanded a jury trial." *Haugen* Memo

---

will benefit from the Section 36(b) claim. Consolidation means that all the Funds will share a recovery through one action. Otherwise, the Funds will be involved in piecemeal litigation and face inconsistent adjudications.

[7] Defendants' claim that "marked differences in the fact issues . . . will create profound differences in the scope, scale, and substance of discovery," Def. Mem. at 7, is proved false by the parallels between the *Gilliam* and *Haugen/Bennett* complaints, as demonstrated by the chart, *supra*. The same argument by the *Bennett* Plaintiffs is similarly unconvincing. *Bennett* Letter at 8-9.

at 17-18; *Bennett* Letter at 8.  Courts have found that the simultaneous prosecution of jury and bench trials is not grounds to deny consolidation.  In an action where it was "patent" that common questions of fact and law were involved, but the defendants argued that the dual bench/jury trial posture of the cases would present conflicts, the Southern District of New York stated:

> Such strategic conflicts -- potentially present whenever there are multiple defendants, regardless of whether the case is jury, non-jury, or both -- do not ordinarily constitute the kind of "prejudice" that impacts the fairness of the trial or otherwise weighs against consolidation. [ . . . ] In reality, however, multiple defendant jury and non-jury cases are routinely -- and fairly -- tried together without any actual prejudice to any party concerned. . . .  There is nothing special about this case that warrants a contrary result.

*Golden Trade S.R.L. v. Lee Apparel Co.*, 90 Civ. 6291, 1997 U.S. Dist. LEXIS 8924, at *7-8 (S.D.N.Y. June 24, 1997) (citing *In re Great Lakes Dredge & Dock Co.*, 895 F. Supp. 604, 615 (S.D.N.Y. 1995) (ordering simultaneous bench and jury trial in a consolidated multi-party action)).  Here, where it is also patent that common questions of fact and law exist, there is "nothing special" about this case that warrants a denial of consolidation on the grounds that jury and non-jury trials are possible.[8]

The *Haugen/Bennett* Plaintiffs' claims of prejudicial delays are self-serving, exaggerated, and only based on supposition and conjecture.  Defendants' arguments on these issues are also unavailing.  First, there is no requirement, statutory or otherwise, that would halt all aspects of litigation while class certification issues are being decided, or even appealed.   Second, the

---

[8]     There is also no potential conflict due to Section 36(b)'s statute of limitations.  *See Bennett* Letter at 7; *Haugen* Mem. at 17; Def. Mem. at 8.  The *Gilliam* Plaintiffs' class period of July 19, 1999 through November 17, 2003, necessary for other claims, does not countermand the statutorily proscribed limitations period for Section 36(b).  Recovery by the *Gilliam* Plaintiffs under Section 36(b), for *all* Fidelity Funds, will be in accordance with 15 U.S.C. § 80a-35(b)(3).  The Funds may recover a year's worth of excessive fees.

*Gilliam* Plaintiffs have the very same Section 36(b) claim as *Haugen/Bennett* so if Defendants

are not going to move to dismiss the latter they would not have reason to move to dismiss the

former.  Third, the filing of a consolidated amended complaint will not prejudice

*Haugen/Bennett* in regard to discovery because there is no mandatory stay of discovery.  The

*Gilliam* Plaintiffs are prepared to immediately commence with discovery.[9]  Accordingly,

consolidation is appropriate here and should and granted.

### POINT II

### THE *GILLIAM*  PLAINTIFFS MAY BRING BOTH<br>CLASS AND DERIVATIVE CLAIMS IN THIS LITIGATION

The *Haugen/Bennett* Plaintiffs cite numerous cases in support of their contention that

consolidation is inappropriate because the *Gilliam* Plaintiffs cannot simultaneously bring class

and derivative claims in this litigation.  *See Haugen* Memo at 10-11; *Bennett* Letter at 7-8.

However, all of these cases deal with lawsuits where ***the companies themselves are named***

***simultaneously as defendants in the class claims and nominal defendants in the derivative***

***claims***, which courts have held could potentially create a conflict in certain situations.  ***This is***

***not the case here***.  The conflict that these cases deal with simply is not present in the *Gilliam*

Actions and, therefore, these cases cited by *Haugen/Bennett* are inapposite.  Because the Funds

are ***not*** named as defendants in the *Gilliam* Actions, the class and derivative claims are consistent

and complementary and one counsel can pursue both.

---

[9]     In a virtually identical case pending in the District of New Jersey, *In re Lord Abbett Mutual Funds Fee Litigation*, Master File No. 04-cv-559 (WJM), Magistrate Judge Ronald J. Hedges ruled on November 29, 2004, that the Private Securities Litigation Reform Act of 1995 does not apply to claims under the Investment Company Act and Investment Advisers Act.  Magistrate Judge Hedges therefore found that a blanket stay of discovery during the pendency of a motion to dismiss was ***not*** appropriate and granted the plaintiffs class discovery.

Even where a class claim against a defendant and a derivative claim on behalf of the same defendant are brought in a single action, "[i]t is well-settled that shareholders have the right to bring direct and derivative actions simultaneously." *In re Transocean Tender Offer Sec. Litig.*, 455 F. Supp. 999, 1014 (N.D. Ill. 1978) (citing *J. I. Case Co. v. Borak*, 377 U.S. 426, 431 (1964)); *Yamamoto v. Omiya*, 564 F.2d 1319, 1326 (9th Cir. 1977) (explicitly recognizing the right of a shareholder to bring both direct and derivative actions). *See also In re Dayco Corp. Derivative Sec. Litig.*, 102 F.R.D. 624, 630 (S.D. Ohio 1984) ("the Court agrees with Plaintiff that the case law is virtually unanimous in holding that one counsel can represent a stockholder bringing *both* an individual *and* a derivative action") (emphasis in original).

Class and derivative claims may be brought in the same lawsuit because courts recognize that the distinction between individual and derivative shareholder suits is often only "theoretical" and does not justify a per se rule prohibiting joinder of such actions. *See Dayco*, 102 F.R.D. at 630 (decisions that "stockholders pursuing individual claims could not also serve as representatives of a class of derivative plaintiffs" relied on a "theoretical distinction between individual and derivative stockholder suits" that is "not rooted in the realities of most individual and derivative suits, which usually are 'equally contingent upon the proof of the same nucleus of facts'") (citations omitted); *Transocean*, 455 F. Supp. at 1014 ("the great weight of authority rejects a *Per se* rule prohibiting such representation, and simultaneous prosecutions have been permitted where the asserted 'antagonism' between the primary and derivative actions is merely a 'surface duality'") (citing *Bertozzi v. King Louie Int'l, Inc.*, 420 F. Supp. 1166, 1179-80). [10]

_____

[10]    Counsel for *Haugen* rely on *Kamerman v. Steinberg*, 113 F.R.D. 511, 516 (S.D.N.Y. 1986) in arguing that an inherent conflict exists. *Haugen* Memo at 11. The court in *Kamerman*, however, stated that "[c]ourts … have recognized that suing in both an individual and derivative capacity presents a substantial *potential* for conflict," demonstrating that there is not a *per se* rule prohibiting such representation. 113 F.R.D. at 56 (emphasis added).

A party bringing suit in both an individual and derivative capacity can avoid a potential conflict of interest by showing that he can "fairly and adequately represent the interests of the shareholders . . . in enforcing the right of the corporation." *Petersen v. Federated Dev. Co.*, 416 F. Supp. 466, 475 n.6 (S.D.N.Y. 1976). The court in *Bertozzi v. King Louie International, Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976) certified a class action upon finding that the plaintiffs' success in prosecuting both class and derivative actions was "equally contingent upon the proof of the same nucleus of facts" and that "they and their counsel can be expected to attack all fronts with equal vigor."

Here, the *Gilliam* Plaintiffs seek to prove their class and derivative claims on the "same nucleus of facts" because they aim to show, *inter alia*, that Defendants charged investors and the Funds excessive fees. The Fidelity shareholders and the Funds themselves are linked as both suffered at the hands of the same Defendants (*i.e.*, those who run the Funds and are charged with protecting their interests). Defendants embarked on a single course of conduct by which they enriched themselves at the expense of the Funds and their shareholders. In demonstrating Defendants' wrongful conduct, Plaintiffs and their counsel will necessarily need to show the same nucleus of facts for both the class and derivative claims and will act with equal vigor. As such, counsel for the *Gilliam* Plaintiffs will adequately represent the interests of all shareholders while at the same time enforcing the rights of the Funds because those interests are perfectly aligned against common wrongdoers and ***the Funds are not named as Defendants***. Thus, far from being a conflict, the assertion of class and derivative claims against Defendants will obtain the maximum recovery for the maximum past and present investors in the Funds.

The *Haugen/Bennett* Plaintiffs also argue that there is an impermissible conflict of interest "because recovery in a class suit could reduce potential recovery in a derivative suit."

*Haugen* Memo at 10. *See also Bennett* Letter at 7 (class claims "seek damages that could ultimately have a negative impact on the Fidelity funds"). First, this argument makes no sense where, as here, the class claims are not asserted against the Funds and no recovery is sought from the Funds. Second, this argument was rejected in *Bertozzi, supra,* relying on *Lamphere v. Brown University*, 71 F.R.D. 641 (D.R.I. 1976). In *Lamphere*, the court stated:

> "[O]nly a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status." . . . *There is no conflict of interest among class members regarding [the] central issue [of liability]* . . . . The potential conflict troubling the defendants can arise only at the remedy stage of litigation. . . . If the potential conflict . . . should materialize when and if remedy proceedings are reached in this case, Rule 23 gives this court sufficient flexibility to take appropriate corrective measures at that time.

*Id.* at 650 (citation omitted) (emphasis added).[11]

Additionally, there is no conflict because a mutual fund is not like a typical corporation to which the ordinary distinctions between class and derivative forms of action can be rigidly applied. Any recovery "on behalf of a fund" would flow directly to shareholders of that fund by increasing the Net Asset Value of the fund. *See Tannenbaum v. Zeller*, 552 F.2d 402, 405-06 (2d Cir. 1977) ("The mutual fund industry is in many ways unique. [...] A mutual fund is a 'mere shell,' a pool of assets consisting mostly of portfolio securities that belongs to the individual investors holding shares in the fund.).

In short, *Haugen/Bennett* seek a limited derivative action (only on behalf of five of the 206 Funds) that will leave the vast majority of the Fidelity Funds without recourse. The *Gilliam*

---

[11]     The *Haugen* Plaintiffs' citation to *Crawford v. Magee*, No. 89-1038, 1993 U.S. Dist. LEXIS 15144, *11-12 (D. Mass. Oct. 12, 1993), is inapposite. In *Crawford*, the court found economic antagonism between the proposed class representative and members of the class because the proposed class representative was not a part of the Employee Stock Ownership Plan on whose behalf the derivative action was brought. Here, however, no such antagonism exists.

Plaintiffs seek to recover for all the Funds. In addition, the *Gilliam* Plaintiffs seek the maximum recovery for the maximum investors -- past and current -- by increasing the net assets of all the Funds through the derivative claims and recovering damages for the Class on the direct claims. Having these alternative theories in one case allows the class and derivative claims, based on the same nucleus of facts, to be effectively and efficiently litigated. It is in the best interest of the Class and the Funds to be represented by a single counsel group in a single consolidated action.

## POINT III

### THE PURPORTED "STANDING" ARGUMENT IS A RUSE AND IS IRRELEVANT TO THIS CONSOLIDATION MOTION

The *Haugen* Plaintiffs argue that the *Gilliam* Plaintiffs do not have standing to sue on behalf of the entire universe of Fidelity Funds, but instead can sue only on behalf of the Funds they own. *Haugen* Memo at 12-14 (citing Investment Company Act §36(b)). Under the *Haugen* Plaintiffs' rationale, *Gilliam's* Section 36(b) claims can be brought only on behalf of 32 Funds if the *Gilliam* Plaintiffs' counsel is appointed Lead Counsel and two Funds if the *Haugen* Plaintiffs' counsel is appointed lead counsel.[12] This supposed standing argument is a ruse. First, the standing argument has nothing to do with consolidation. The *Gilliam* Plaintiffs plainly have standing to assert Section 36(b) claims on behalf of the 32 Funds they own (which includes the five owned by *Haugen/Bennett*). Second, courts have held that where there is a common course of conduct and juridical links, a plaintiff can bring claims against related defendants in which the

---

[12]    Neither *Haugen* nor *Bennett* discusses the overlap of Funds represented by the *Haugen*, *Bennett*, and *Gilliam* Plaintiffs. Under the *Haugen/Bennett* theory, would the *Gilliam* Plaintiffs lose the ability to bring claims on behalf of five funds they own so the *Haugen/Bennett* Plaintiffs can maintain a parallel action on behalf of those same funds? Would the *Gilliam* Plaintiffs lose all of their Section 36(b) claims for the other 27 Funds that they own that *Haugen/Bennett* do not? In addition, the *Gilliam* Plaintiffs have also asserted a derivative claim under Section 215 of the Investment Advisers Act. The *Haugen/Bennett* Plaintiffs do not assert that claim, yet they provide no explanation of what would happen to that claim if they were the only ones to be able to pursue a derivative claim.

plaintiff technically has no direct interest. But this is an issue for the Court on Defendants'
motions to dismiss. Accordingly, consolidation is appropriate.

Section 36(b) of the Investment Company Act gives a security holder of a registered
investment company the right to bring an action against an investment adviser for breach of
fiduciary duty. *See* 15 U.S.C. § 80a-35(b). The Supreme Court has held that Section 36(b)
claims are "direct rather than derivative." *Kamen v. Kemper Fin. Servs.*, 500 U.S. 90, 108 (1991)
(citing *Daily Income Fund, Inc. v. Fox*, 464 U.S. 523, 540 (1984)); s*ee also Krantz v. Fidelity
Mgmt. & Research Co.*, 98 F. Supp. 2d 150, 157-58 (D. Mass. 2000) (stating in an individual
action that "[a] shareholder has a direct private cause of action under § 36(b) against the
investment adviser 'for breach of fiduciary duty in respect of . . . compensation paid by a fund'")
(citing 15 U.S.C. § 80a-35(b)).[13] There is no dispute that the *Gilliam* Plaintiffs have standing to
bring a Section 36(b) claim on behalf of the Funds they own.[14] The *Haugen* Plaintiffs
nonetheless argue that for each Fund there must be a corresponding plaintiff. This argument,
whether legally correct or not, is irrelevant to the issue of consolidation because the *Gilliam*
Plaintiffs have standing to bring their Section 36(b) claims against 32 of the Funds, including the
ones owned by *Haugen/Bennett*.

---

[13]    That the cause of action in Section 36(b) belongs to the shareholder is illustrated in a case on which
*Haugen* relies. In *Green v. Nuveen Advisory Corp.*, 186 F.R.D. 486 (N.D. Ill. 1999), the plaintiffs had moved for
*class* certification of their 36(b) claim, demonstrating that such claim is treated as a class (direct), not a derivative,
claim. While the court held that the plaintiffs did not have standing to bring the claim other than for the funds in
which they were security holders, the court gave no basis for its holding and it is therefore not persuasive.
Moreover, there is no indication that *Nuveen* addressed the juridical link doctrine.

[14]    Once the plaintiff's standing to assert his or her claim has been established, the plaintiff's ability to
represent the class depends solely on whether the requirements of Rule 23 are met. *See Sosna v. Iowa*, 419 U.S.
393, 402-403 (1975).

Moreover, nothing in the Investment Company Act precludes a representative action where, as here, there is a common investment adviser wrongdoer across a multitude of mutual funds where each mutual fund is making the same payments that are the source of the action. In fact, Section 36(b)'s legislative history supports *Gilliam's* position. *See* S. Rep. No. 91-184, at 15 (1969) ("In the case of fund complexes, [analysis of a violation of 36(b)] could, under certain circumstances, *include consideration of services rendered by such investment advisers to other funds in such complex and compensation or payments made by such other funds for such services*.") (emphasis added). The *Haugen* Plaintiffs mistakenly rely on traditional cases where there is a single company as the nominal defendant on whose behalf the suit is brought. [15] In this case, however, there are common wrongdoers across all of the Funds and all of the Funds are connected through common boards, leadership, services and shared fees and expenses. [16] Requiring each Fund to have a shareholder plaintiff results in uneven adjudication of wrongs and the potential of multiple small actions against identical defendants on identical claims.

An investor can bring his or her direct Section 36(b) claim representatively under Rule 23 on behalf of the investors in other funds who have common claims against the same defendants.

---

[15]    In the cases cited by *Haugen*, those plaintiffs, unlike the Funds here, did not have common claims against the defendants. *See Ramos v. Patrician Equities Corp.*, 765 F. Supp. 1196 (S.D.N.Y. 1991) (plaintiffs lacked standing against certain defendants because those defendants did not do any work in connection with the limited partnerships at issue); *Spira v. Nick*, 876 F. Supp. 553 (S.D.N.Y. 1995) (plaintiff could not have a reciever appointed for 25 entities because the applicable statute specified that the movant must have an interest in the property and the court found that the plaintiff lacked standing for the 23 entities in which he had no ownership interest); *In re Colonial Limited Partnership Litigation*, 854 F. Supp. 64 (D. Conn. 1994) (the standing issue focused on whether the plaintiff had suffered the requisite injury under RICO to bring the claim); *Nenni v. Dean Witter Reynolds, Inc.,* Civ. No. 98-12454-REK, 1999 U.S. Dist. LEXIS 23351 (D. Mass. Sept. 29, 1999) (the court only addressed the standing issue regarding plaintiffs' §§ 11(a) and 12 claims ).

[16]    In *Dandorph v. Fahnestock & Co.*, 462 F. Supp. 961, 965 (D. Conn. 1979) and *Olesh v. Dreyfus Corp.*, No. CV-94-1664 (CPS), 1995 WL 500491 (E.D.N.Y. Aug. 8, 1995), on which *Haugen* relies, the plaintiff lacked individual standing. The *Gilliam* Plaintiffs have standing to bring their individual claims. *Weiner v. Winters*, 50 F.R.D. 306 (S.D.N.Y. 1970) conflicts with more recent case law in the Second Circuit that has allowed a shareholder in one mutual fund to represent shareholders in other funds. *See infra* at 17-18.

In *In re Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318, 2000 U.S. Dist. LEXIS

13469 (S.D.N.Y. Sept. 19, 2000) the court certified plaintiffs who invested in one fund to

represent purchasers in another fund, stating:

> Courts have repeatedly held that on allegations such as these, class representatives
> need not have invested in each security so long as the plaintiffs have alleged a
> single course of wrongful conduct with regard to each security.  Courts have not
> addressed this concern *vis a vis* the doctrine of standing, but rather have examined
> such concerns pursuant to Rule 23(a)(3)'s typicality requirement.

*Id*. at *8.  In *Dreyfus*, certification was supported by the same factors that exist in this case:

> Here, the claims of the named plaintiffs and prospective class members derive
> from the same course of events.  The plaintiffs have alleged that both Funds made
> similar misrepresentations and omissions in the Registration Statements,
> Prospectuses, Statements of Additional Information and annual and semi-annual
> reports used to sell the Funds. . . . And indeed the claims of the named plaintiffs
> and prospective class members are based on the same legal theories.

2000 U.S. Dist. LEXIS 13469, at *14.  *See also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d

410, 422 (6th Cir. 1998) (an individual in one ERISA plan can represent a class of plaintiffs --

including some belonging to other plans -- as long as "the gravamen of the plaintiff's challenge

is to the general practices [of the defendant] which affect all of the plans"); *Hicks v. Morgan

Stanley & Co.*, 01 Civ. 10071, 2003 U.S. Dist. LEXIS 11972, at *8 (S.D.N.Y. July 16, 2003).

    Analogous cases also confirm that Plaintiffs may represent purchasers of other Funds, in

light of the similarity of the claims of all Class members against all Defendants and the close

interrelationship and juridical links of all the Funds with each other and Defendants.  *See, e.g.,

Maywalt v. Parker & Parsley Petroleum Co.*, 147 F.R.D. 51, 56-57 (S.D.N.Y. 1993) (plaintiffs

who invested in three limited partnerships could represent persons who had invested in two other

limited partnerships, because the complaint alleged that investors in all five limited partnerships were victims of a single pattern of fraud by defendants).[17]

Here all the Defendants and all the Funds are juridically linked with each other, making collective prosecution of this action the most efficient means for resolution of the dispute. "While ordinarily 'a plaintiff who has no cause of action against [a] defendant can not 'fairly and adequately protect the interests' of those who do have such causes of action,' an exception may apply to cases in which 'all defendants are *juridically related* in a manner that suggests a single resolution of the dispute would be expeditious.'" *Alves v. Harvard Pilgrim Health Care, Inc.*, 204 F. Supp. 2d 198, 205 (D. Mass. 2002) (emphasis added). The juridical link doctrine is properly applied where efficiency and expediency allow plaintiffs to join together to address **common wrongs** by a group of defendants. *See Payton v. County of Kane*, 308 F.3d 673, 678-79 (7th Cir. 2002) ("if the plaintiffs as a group -- named and unnamed -- have suffered an identical injury at the hands of several parties related by way of a conspiracy or concerted scheme, or otherwise juridically related in a manner that suggests a single resolution of the dispute would be expeditious, the claim can go forward").

The District of Massachusetts has agreed with this concept. In *Alves*, 204 F. Supp. 2d at 205, two class representatives brought an ERISA class action against five defendants. Even though neither plaintiff was ever a member of an ERISA plan that the defendants sponsored, the District of Massachusetts concluded that "plaintiffs' claims against [defendants] should not be

---

[17]   *See also In re Prudential Sec. Inc. Ltd. P'ship Litig.*, 163 F.R.D. 200, 208 (S.D.N.Y. 1995) (limited partnership investments); *Tedesco v. Mishkin*, 689 F. Supp. 1327, 1335-36 (S.D.N.Y. 1988) (investors in various companies and partnerships controlled by defendants could represent a class including investors in other companies and partnerships); *Kitchens v. U.S. Shelter Corp.*, No. 82-1951, No. 3-0771, 1983 U.S. Dist. LEXIS 12812 (D.S.C. Oct. 13, 1983) (permitting named plaintiffs to represent purchasers of interests in 12 separate limited partnerships, even though representatives held interests in only three of the partnerships).

dismissed for lack of standing.  Because these defendants [were] wholly[-]owned affiliates of [the corporate defendant], in which plaintiffs were participants, and the copayment plan provisions [were] substantially the same, a single resolution of the dispute would be expeditious."  *Id*.

The rationale of the juridical link doctrine is wholly applicable in the mutual funds context, where the Funds' common corporate parents, common distributors and common investment advisers dominate and control the operations of the mutual funds they offer.  The Funds predominately share a common Board of Directors, officers and employees of Fidelity who administer the Funds and portfolios generally, and are not limited to individual Funds.  In addition, Defendants are alleged to have engaged in a common scheme of excessive fees that uniformly hurt the Funds, including failing to pass along economies of scale, and entering into improper agreements with brokers involving improper directed brokerage and soft dollar activity.  Under the juridical link doctrine, the Funds would be assured of efficient and consistent treatment.  *See Moore v. Comfed Sav. Bank*, 908 F.2d 834, 838 (11th Cir. 1990) (While "[o]ther named plaintiffs could be supplied to match with each named defendant […] it would be unwieldy to do so. […] The case is simpler and more economical with the class of plaintiffs and the named defendants.").  Accordingly, the *Gilliam* Plaintiffs may bring claims on behalf of each of the 206 Funds.  Resolution of this issue must await Defendants' motion to dismiss and does not prevent consolidation.

In short, in order to advance their own monetary interests, the *Haugen/Bennett* counsel argue to restrict, instead of maximize, recovery for the injured Fidelity Funds.  The attempt by counsel for *Haugen/Bennett*, supported by Defendants, to reduce the number of Funds on whose behalf claims can be brought, and essentially abandon those Funds where they do not have a

shareholder client, evidences that their self-serving goal in this case is not to fight for the best interests of all those victimized by Defendants, but rather to carve out a lead counsel position for themselves at all costs.  The Court should not reward such self-interested behavior. Consolidation of these cases is appropriate and efficient and should be granted.[18]

## CONCLUSION

For the reasons detailed herein and in their prior submissions, Plaintiffs respectfully request this Court to:  (i) consolidate the Actions; (ii) appoint the *Gilliam* Plaintiffs as Co-Lead Plaintiffs; (iii) appoint Milberg Weiss, Stull, Stull & Brody, and Scott + Scott as Co-Lead Counsel; and (iv) appoint Moulton & Gans as Liaison Counsel.

Dated:  December 2, 2004

**MOULTON & GANS, P.C.**

By: __/s/ Nancy Freeman Gans_____
    Nancy Freeman Gans (BBO #184540)
33 Broad Street, Suite 1100
Boston, Massachusetts  02109-4216
(617) 369-7979

***Counsel for Plaintiffs James Gilliam, William S. Groeschel, Ghassan J. Awali, Marina Berti, Valeriex A. Daspit, Arthur G. Denker, Randall C. Heyward, Stanley H. Krupa, Nicole Lenzi, David M. Lucoff, Joseph F. Martingano, Michael S. Mendolia, Patricia K. Munshaw, Brian D. Reese, Jay J. Rupp, Gilbert P. Travis, Jewel R. Travis and David O. Fallert and Proposed Liaison Counsel***

---

[18]    The *Gilliam* Plaintiffs filed the Notice of Pending Motions in Related Cases (the "Notice") to notify the Court, after Judge Stearns' recusal, that there are seven cases that the *Gilliam* Plaintiffs believe are related and should be consolidated.  In addition, the Notice provided the Court with the *Gilliam* Plaintiffs' previously filed Motions for Consolidation and Appointment of Tri-Lead Counsel and Liaison Counsel.  Finally, the Notice accurately informed the Court that "other parties have filed Oppositions and other responses to the two Motions" and indicated the docket numbers of those papers.  Despite the purely procedural nature of the Notice, the *Haugen/Bennett* Plaintiffs and Defendants have used it as an opportunity to set forth yet again their very same arguments against consolidation.   The submissions in opposition to the Notice raise no new arguments against consolidation and this memorandum fully addresses the issues raised by the parties opposing consolidation.

**MILBERG WEISS BERSHAD
  & SCHULMAN LLP**
Jerome M. Congress
Janine L. Pollack
Kim E. Levy
Michael R. Reese
One Pennsylvania Plaza
New York, New York  10119-0165
(212) 594-5300

*Counsel for Plaintiff James Gilliam and Proposed
Tri-Lead Counsel*

**STULL, STULL & BRODY**
Jules Brody
Aaron Brody
6 East 45th Street
New York, New York  10017
(212) 687-7230

*Counsel for Plaintiffs William S. Groeschel,
Ghassan J. Awali, Marina Berti, Valeriex A.
Daspit, Arthur G. Denker, Randall C. Heyward,
Stanley H. Krupa, Nicole Lenzi, David M. Lucoff,
Joseph F. Martingano, Michael S. Mendolia,
Patricia K. Munshaw, Brian D. Reese, Jay J.
Rupp, Gilbert P. Travis, Jewel R. Travis and David
O. Fallert and Proposed Tri-Lead Counsel*

**SCOTT + SCOTT, LLC**
Arthur L. Shingler, III
Wells Fargo Building
401 B Street, Suite 307
San Diego, California  92101
(619) 233-4565

*Counsel for Plaintiff James Gilliam and Proposed
Tri-Lead Counsel*

**LAW OFFICES OF CHARLES J. PIVEN, P.A.**
Charles J. Piven
Marshall N. Perkins
The World Trade Center – Baltimore
Suite 2525
401 East Pratt Street
Baltimore, Maryland  21202
(410) 332-0030

*Counsel for Plaintiff James Gilliam*

**SCHIFFRIN & BARROWAY, LLP**
Marc A. Topaz
Richard A. Maniskas
Three Bala Plaza East
Suite 400
Bala Cynwyd, Pennsylvania  19004
(610) 667-7706

*Counsel for Plaintiff Bogatin Family Trust*

**GILMAN AND PASTOR, LLP**
David Pastor (BBO #391000)
Stonehill Corporate Center
999 Broadway, Suite 500
Saugus, Massachusetts  01906
(781) 231-7850

*Counsel for Plaintiff Bogatin Family Trust*

**WEISS & YOURMAN**
Joseph H. Weiss
Richard A. Acocelli
551 Fifth Avenue, Suite 1600
New York, New York  10176
(212) 682-3025

*Counsel for Plaintiffs William S. Groeschel,*
*Ghassan J. Awali, Marina Berti, Valeriex A.*
*Daspit, Arthur G. Denker, Randall C. Heyward,*
*Stanley H. Krupa, Nicole Lenzi, David M. Lucoff,*
*Joseph F. Martingano, Michael S. Mendolia,*
*Patricia K. Munshaw, Brian D. Reese, Jay J.*
*Rupp, Gilbert P. Travis, Jewel R. Travis and David*
*O. Fallert*

## <u>CERTIFICATE OF SERVICE</u>

     I, Susan M. Greenwood, hereby certify that I served a copy of the foregoing document upon counsel for all parties by facsimile this 2d day of December, 2004.


                    __/s/ Susan M. Greenwood_____
                       Susan M. Greenwood